**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL EDWARDS,

                              Petitioner,

              - v -                                    Civ. No. 9:16-CV-945
                                                            (BKS/DJS)
MICHAEL KIRKPATRICK,

                              Respondent.

**APPEARANCES:**                          **OF COUNSEL:**

MICHAEL EDWARDS
Petitioner *Pro Se*
11-A-5787
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York 12929

HON. BARBARA D. UNDERWOOD          MATTHEW B. KELLER, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

    *Pro se* Petitioner Michael Edwards was convicted of Criminal Possession of a

Weapon in the Second Degree.  Dkt. No. 1, Petition ("Pet.") at p. 1.  He was sentenced to a

---

[1]  This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

determinate term of imprisonment of fifteen years as a second felony offender. *Id.*; Dkt. No. 16-10.[2] Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: (1) the gun underlying the criminal charges should have been suppressed as the result of an illegal search; (2) the evidence was insufficient for a conviction; (3) prosecutorial misconduct; (4) ineffective assistance of counsel; and (5) the imposition of the maximum sentence of fifteen years was unduly harsh. Pet. at pp. 6-19. Respondent has filed a Memorandum of Law in Opposition to the Petition. Dkt. No. 14, Resp. Mem. of Law. Petitioner filed a Traverse. Dkt. No. 17, Traverse. For the reasons that follow, this Court recommends that the Petition be **denied.**

## I. BACKGROUND

In April 2011, detectives from the New York City Police Department came to Troy, New York in pursuit of suspects in a homicide. Dkt. No. 16-6 at p. 16.[3] The detectives had information that the suspects may be at a particular address in Troy. *Id.* Troy Police Department Detective Sergeant Ronald Epstein began an investigation of the address which was an apartment under the authority of the Troy Housing Authority. Dkt. No. 16-8 at pp. 161-63. That investigation determined that the apartment was leased to a woman named Beauquisha Anderson. *Id.* at 162. Further investigation, including interviews with multiple

---

[2] The State Court Records in this case are docketed as Dkt. Nos.16-1 through 16-10. Throughout this Report-Recommendation citations to the State Court Records will be to the appropriate Docket Number and the page numbers assigned by the Court's CM/ECF System.

[3] It appears from the record that Petitioner was not one of the individuals being sought by the New York City Police Department.

witnesses, gave Detective Epstein reason to believe that the apartment had been abandoned by Ms. Anderson and was now vacant. Dkt. No. 16-6 at pp. 18-21 & 52.

With the assistance of Troy Housing Authority officials, Detective Epstein and other law enforcement personnel associated with a United States Marshals Service Regional Task Force entered the apartment. Dkt. No. 16-9 at p. 33. Upon entering the apartment three individuals were present, including Petitioner. *Id.* at p. 12; Dkt. No. 16-8 at p. 170. Ms. Anderson was not present. Dkt. No. 16-8 at p. 150.

Mark Voellm, a Senior Inspector with the United States Marshals Service, was the first to encounter Petitioner. Dkt. No. 16-9 at p. 37. Upon entering the apartment's only bedroom, Voellm saw Petitioner laying on a bed, with a woman sitting on the bed.[4] *Id.* at pp. 36-37. Voellm directed Petitioner to show his hands and Petitioner complied. *Id.* at pp. 37-38. Voellm then briefly turned away from Petitioner and when he looked back he saw that Petitioner had rolled over in the bed and was now leaning with his hands over the side of the bed. *Id.* at pp. 41-43. Law enforcement officials, including Detective Epstein, then secured Petitioner and removed him from the bedroom. *Id.* at pp. 46-47.

A subsequent search of the bedroom resulted in the discovery of a handgun under the bed near where Inspector Voellm had seen Petitioner leaning. Dkt. No. 16-8 at p. 179. The gun was recovered within arm's reach of where Petitioner had been leaning over the bed. *Id.* The gun was loaded and operable. *Id.* at p. 188. The evidence at trial further established that

---

[4] The third individual was discovered in the living room. Dkt. No. 16-8 at p. 170.

Ms. Anderson was the only tenant of the apartment and that Petitioner had never lived there. *Id.* at pp. 147 & 149-50.

Petitioner was named in a two count indictment charging him with one count of Criminal Possession of a Weapon in the Second Degree and one count of Criminal Possession of a Weapon in the Third Degree. Dkt. No. 16-2 at pp. 112-13. The People also filed a Special Information charging Petitioner as a predicate felon based on a 1999 conviction for Assault in the First Degree. Dkt. No. 16-2 at p. 114. Petitioner was convicted of the Criminal Possession of a Weapon in the Second Degree charge following a jury trial. Dkt. No. 16-2 at p. 18; Dkt No. 16-9 at p. 217. Based on the Special Information, which Plaintiff conceded at sentencing was accurate, Petitioner was sentenced as a second felony offender to a determinate term of fifteen years in prison. Dkt. No. 16-10.

Petitioner appealed his conviction to the Appellate Division, Third Department which affirmed. *People v. Edwards*, 124 A.D.3d 988 (3d Dep't 2015). Leave to appeal to the New York Court of Appeals was denied. 25 N.Y.3d 1201 (2015). Petitioner does not allege that he filed any collateral attack on his conviction in state court. *See generally* Pet. This proceeding followed.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)). The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103

(2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

### A. Independent and Adequate State Ground for Relief

At the outset, Respondent contends that Petitioner's second and third claims for relief, challenging the sufficiency of the evidence and alleging prosecutorial misconduct, are barred by independent and adequate state law grounds. *See* Resp. Mem. of Law at pp. 17-19 & 24-25.

"Under the independent and adequate state ground doctrine, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Pierotti v. Walsh*, 834 F.3d 171, 176 (2d Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

The Appellate Division found that Petitioner made only a general motion for dismissal that "failed to preserve his legal sufficiency argument." *People v. Edwards*, 124 A.D.3d at 990 n. "New York's appellate courts 'uniformly instruct that to preserve a particular issue for appeal, a defendant must specifically focus on the alleged error.'" *Ali v. Unger*, 2014 WL 257270, at *4 (W.D.N.Y. Jan. 23, 2014) (quoting *Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007)). Thus, "[i]t is well settled under New York law that a general objection to the sufficiency of the evidence does not preserve particular theories of inadequacy for appeal." *Folkes v. Lee*, 2011 WL 2610496, at *2 (E.D.N.Y. June 30, 2011). Therefore, the Appellate Division's holding constitutes an independent and adequate state law ground sufficient to bar federal *habeas* review of this claim.

With respect to any prosecutorial misconduct claim, the Court found that any such objection "was not preserved by raising an objection to the testimony during the trial." *People v. Edwards*, 124 A.D.3d at 991. It is well established that this preservation requirement relied upon by the Appellate Division "suffices as a state law ground independent of the federal constitutional issue for purposes of preventing habeas review." *Richardson v. Greene*, 497

F.3d 212, 217 (2d Cir. 2007); *see also Garvey v. Duncan*, 485 F.3d at 715-16 (New York's contemporaneous objection rule is a "firmly established and regularly followed state law" and thus qualifies as an "independent and adequate state law ground"). Courts in the Second Circuit routinely find that the failure to comply with this contemporaneous objection rule is an independent and adequate state ground, that bars consideration of the habeas claim on the merits. *Smith v. Capra,* 2013 WL 6501693, at *10 (S.D.N.Y. Dec. 11, 2013); *Eugene v. Payant*, 2007 WL 2116375, at *3 (E.D.N.Y. July 13, 2007) (citing cases). Petitioner does not dispute that these matters were not preserved for review. *See generally* Pet. and Traverse.

Accordingly, it is recommended that the second and third grounds for relief in the Petition be denied on the ground that they are barred by an independent and adequate state ground.[5]

### B. Petitioner's Fourth Amendment Claim

Petitioner's first claim alleges error in the failure of the state court to suppress the handgun at issue as the product of an unlawful search. Pet. at pp. 6-7.

The law is clearly established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). As a result:

> review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures

---

[5] In the interests of completeness, the merits of each claim is nonetheless addressed below.

at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). New York provides a constitutionally sufficient procedure for the litigation of Fourth Amendment claims such as those raised here. *Goldston v. O'Meara*, 2017 WL 3034314, at *14 n. 5 (N.D.N.Y. July 17, 2017) (citing N.Y. Crim. Proc. Law § 710); *Denis v. Unger*, 2013 WL 5300688, at *5 (N.D.N.Y. Sept. 19, 2013).

Petitioner availed himself of those procedures. Prior to trial he sought to suppress the gun as evidence. Dkt. No. 16-3 at pp. 7-11. The state trial court directed that a hearing be held on the motion to suppress. *Id.* at p. 20. Following a suppression hearing held on November 7, 2011, the trial court denied the motion to suppress. *Id.* at 32; Dkt No. 16-6. Petitioner's trial counsel then sought to reargue the decision. Dkt. No. 16-3 at pp. 22-25. The trial court denied the motion to reargue and issued a written decision explaining its conclusion. *Id.* at pp. 32-33.

Having fully litigated his claim at a suppression hearing, Petitioner's Fourth Amendment claim is not cognizable and is no basis for relief in this proceeding. *Acevedo v. Superintendent,* 2018 WL 1326080, at *6 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1319017 (N.D.N.Y. Mar. 13, 2018); *Blake v. Martuscello*, 2013 WL 3456958, at *6 (E.D.N.Y. July 8, 2013) (citing cases).

## C. Sufficiency of the Evidence

Petitioner next alleges that the evidence was insufficient to support a conviction

because the prosecutor failed to establish Petitioner's possession of a weapon.  For the reasons that follow, Petitioner cannot carry the heavy burden imposed by such a claim and this ground of his Petition is no basis for relief.

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Under the AEDPA "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. at 773).

Petitioner argues the evidence was insufficient to convict because it failed to establish the required element of possession.  Pet. at p. 9.  In New York, possession "requires physical possession or otherwise . . . exercis[ing] dominion or control over tangible property."  N.Y. Penal Law § 10.00.  New York courts recognize that a conviction for possession can be based on constructive possession so long as it is established that the "defendant exercised dominion or control over [the gun] by a sufficient level of control over the area in which [it was] found."  *People v. Boyd*, 145 A.D.3d 1481-82 (4th Dep't 2016); *People v. Sierra,* 45 N.Y.2d 56, 60 (1978).  Petitioner appears to argue that because others were present in the apartment at the time he was arrested, the gun could have belonged to them and there was insufficient

proof of Petitioner's possession.  Pet. at pp. 9-10.

Considered under the "twice-deferential standard" imposed under the AEDPA, *Parker v. Matthews*, 567 U.S. at 43, Petitioner's sufficiency of the evidence claim clearly lacks merit. The Appellate Division found the evidence in the record established that:

> when an officer first entered the bedroom in Anderson's apartment, defendant was found lying on his back in a bed. Defendant and a woman who was sitting on the corner of the bed were ordered to raise their hands into the air; however, when the officer realized that he could not fully open the bedroom door, he quickly checked behind the door to confirm that the room was secure. When the officer turned his attention back to defendant, he saw defendant's hands hanging over the side of the bed as he reached in the direction of the gun that was on the floor.

*People v. Edwards*, 124 A.D.3d at 991.  Viewing that evidence in what it called a "neutral light," the Appellate Division held that constructive possession was established.  *Id.*

On review here, the evidence must be viewed "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. at 319.  The evidence at trial established that the gun was found under a bed which Petitioner was in at the time. *See, e.g.*, Dkt. No. 16-8 at p. 179.  It was found within arms reach of Petitioner, Dkt. No. 16-9 at p. 10, and Petitioner admits to having spent the preceding few days in that apartment and bed.  Pet. at pp. 9-10. The legal tenant of the apartment, Ms. Anderson, denied ownership of the gun and testified that she had never seen it in her apartment before.  Dkt. No. 16-8 at pp. 149-50.  The testimony also established that Petitioner was observed reaching for the gun after police had entered the room. Dkt. No. 16-9 at pp. 41-43.  Viewed in the light most favorable to the prosecution, this evidence supports the conclusion by the Appellate Division that Petitioner

was in constructive possession of the weapon. *People v. Edwards*, 124 Ad.3d at 991; *see also People v. Lamont*, 21 A.D.3d 1129, 1130 (3d Dep't 2005) (constructive possession established when "gun was found within arm's reach of the edge of a bed [and] defendant slept in that bed the night before the gun was found"). Nor does the fact that others may have been present in the apartment at the same time as Petitioner undercut the sufficiency of the proof here. In New York "possession, even if joint, is still possession." *People v. Torres*, 68 N.Y.2d 677, 679 (1986).

This evidence was more than sufficient under New York law to establish the possession element and it clearly was not unreasonable for the Appellate Division to have reached that conclusion.

### D. Prosecutorial Misconduct

Petitioner sought to limit testimony at trial of certain law enforcement witnesses about the nature of their work regarding tracking and apprehension of fugitive suspects, and alleges here that the prosecutor's violation of pretrial rulings regarding such testimony amounted to misconduct. Pet. at pp. 12-14. As outlined above, this claim was not objected to in state court and is barred from review here. For the reasons set forth below, the claim also fails on the merits.

"To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor engaged in 'egregious misconduct.'" *Williams v. Duncan*, 2007 WL 2177075, at *26 (N.D.N.Y. July 27, 2007) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d

Cir. 1990)).  It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Instead, the question on habeas review is whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The trial court's pretrial ruling directed that these witnesses could testify only that "New York City police were in Troy in connection with an investigation and that that investigation led them to the apartment in question." Dkt. No. 16-8 at p. 295.  During the course of the trial, several of these witnesses were asked general questions about their work that Petitioner alleges elicited responses that went beyond the scope of this ruling.

"In considering a claim of prosecutorial misconduct, the alleged misconduct must be placed into context and evaluated based upon its severity, the curative measures taken, and the likelihood of conviction absent its occurrence." *Skervin v. Graham*, 2008 WL 5100297, at *5 (N.D.N.Y. Nov. 26, 2008) (citing *Blissett v. Lefevre*, 924 F.2d 434, 440 (2d Cir.1991)). The testimony to which Petitioner now objects was largely background information regarding the basic job duties of those who testified.  By way of example, when Voellm was asked "[c]ould you describe what you do in your position as a U.S. Marshal," he responded "I look for sex offenders that have absconded . . . and . . . we go after all other types of absconders". Dkt. No. 16-9 at p. 27.  Similarly, Investigator Berry testified, in response to a question about his work with the United States Marshals, that part of that work involved locating and

apprehending fugitives.  Dkt. No. 16-9 at pp. 450-51.  At no time did any witness directly implicate Petitioner as a fugitive.  In fact, none of the objectionable questions directly related to Petitioner at all.  In context, such questioning was not sufficiently egregious to constitute misconduct.  *See Hylton v. Ercole*, 2010 WL 2594744, at *18 (E.D.N.Y. June 23, 2010); *Fletcher v. Salamack*, 1989 WL 153061, at *3 (S.D.N.Y. Dec. 14, 1989).

Moreover, the trial court on multiple occasions specifically instructed the jury as to the limited purpose for which the testimony it had heard was being offered.  During Inspector Voellm's testimony the trial court instructed the jury:

> I want it to be absolutely clear to you there are no allegations in this case whatsoever that the defendant or anyone had anything to do with any sex abuse or was in any way an absconder or a fugitive from justice.

> I want it to be clear that this witness is explaining his general, typical duties and background and responsibilities.  They bear no relevance to this case and there is not even an allegation, let alone any proof, that the defendant is any of those things.

Dkt. No. 16-9 at p. 30.  The trial judge additionally advised the jury during his final instructions that such testimony "was offered only as background information.  That testimony bears no other relevance to this case or any issues in this case."  Dkt. No. 16-9 at pp. 185-86. These instructions to the jury ameliorated any danger of prejudice to Petitioner from these comments.  *Skervin v. Graham*, 2008 WL 5100297, at *6.

Taken together, considering the nature of the conduct alleged and the curative action taken by the trial court, the few questions now objected to by Petitioner did not amount to such egregious conduct as to violate his right to a fair trial.  Nor can Petitioner demonstrate

prejudice.  As a result, this claim for relief, if not procedurally barred, should also be denied on the merits.

### E. Ineffective Assistance of Counsel

Petitioner's fourth claim alleges ineffective assistance of trial counsel.  He asserts a series of individual errors by his counsel including the substance of his opening statement, as well as, the failure to call witnesses and the failure to object to questions and evidence offered by the prosecution.  Pet. at pp. 15-16.

"To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland v. Washington*, 466 U.S. at 689). A person challenging a conviction thus must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. at 687.

Establishing prejudice requires Petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. at 694.

The *Strickland* test itself imposes a "high bar." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Under the AEDPA, "it is not enough to convince a federal *habeas* court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002) (citing *Williams v. Taylor*, 529 U.S. at 411). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* On this record, Petitioner cannot make this showing.

Petitioner first objects to the fact that his counsel told the jury during his opening statement that Petitioner "has his own story to tell," Dkt. No. 16-8 at p. 126, but then called no witnesses on Petitioner's case. He contends that this "raised [the] jury's expectations" about the what Petitioner's defense would do to undermine the prosecution's arguments and thereby "assumed a burden that the defense never carried." Pet. at p. 15. As to this last point, defense counsel himself made clear in his opening that it was the prosecution which bore, what he termed the "very heavy burden" of proving guilt. Dkt. No. 16-8 at p. 125. The record also makes clear that the trial judge repeatedly told the jury that the prosecution bore the burden of proof in this case. Dkt. No. 16-8 at p. 105; Dkt No. 16-9 at pp. 167-69, 189-90, & 194-95. Given this record, there is no basis to think the jury was confused as to the burden of proof.

The question regarding what defense to present is also no ground for relief here. "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses

to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). "Counsel's decision as to whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation." *Corines v. Superintendent, Otisville Corr. Facility*, 621 F. Supp. 2d 26, 42 (E.D.N.Y. 2008) (quoting *United States v. Best*, 219 F.3d 192, 201-02 (2d Cir. 2000)). While objecting that counsel failed to call witnesses to controvert the prosecution case, Traverse at p. 21, Petitioner has not identified any witness who could have done so. *See United States v. Nersesian*, 824 F.2d at 1321 (noting that counsel's conduct was reasonable when defendant "does not identify any witnesses that his counsel should have called who would have been helpful.").

The Court also notes that had Petitioner wished to testify it was his right given that "the decision whether to testify belongs to the defendant and may not be made for him by defense counsel." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997). The trial judge questioned Petitioner about his desire to testify and Petitioner said that following discussions with his counsel, he did not wish to do so. Dkt. No. 16-9 at pp. 119-20.

Second, Petitioner claims that counsel failed to object to what he characterizes as prosecution efforts to "color petitioner as the target of hunters of fugitives, violent felons, absconders and sex offenders." Pet. at p. 15. At the outset, that counsel does not object to every objectionable question that was asked does not make his performance constitutionally deficient. *Vassar v. Artus*, 2016 WL 3632712, at *9 (N.D.N.Y. June 29, 2016)*; Zayas v.*

*Ercole*, 2009 WL 6338395, at *11 (E.D.N.Y. Nov. 9, 2009), *report and recommendation adopted in part*, 2010 WL 1438113 (E.D.N.Y. Apr. 8, 2010). This is especially true where, as discussed above, the trial judge had acted *sua sponte* to stop the arguably objectionable line of questioning. Moreover, for the reasons discussed in Point III(D) *supra*, this testimony, when admitted, was not so prejudicial that "a reasonable probability [existed that] the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694.

Third, Petitioner argues that defense counsel erred in not objecting to evidence offered at trial, including the weapon at issue and photographs of the room where the gun was found. Pet. at p. 16. As discussed in Part III(B) *supra*, Petitioner's trial counsel unsuccessfully sought to suppress the weapon by means of a pretrial suppression hearing. The failure to challenge the admissibility of the weapon here following denial of the suppression motion would clearly have been futile. Following denial of that motion, no other non-frivolous basis for objecting to admission of the weapon is apparent from the record (or advanced now by Petitioner). Effective assistance of counsel does not require that counsel make frivolous arguments. *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) ("[T]he failure here to raise an otherwise futile objection could not have rendered counsel ineffective."); *United States v. Lancaster*, 2013 WL 3009771, at *2 (S.D.N.Y. June 13, 2013).

The failure to object to the admissibility of the photos also does not establish ineffectiveness. During his closing argument, defense counsel attempted to use the photographs to undermine the sufficiency of the investigation done by law enforcement by

highlighting "we don't know who took them. We don't know when they were taken. These pictures . . . ask more questions than they answer." Dkt. No. 16-9 at p. 138. This fit well with the overall theme of the closing which argued that a lack of investigation and proof of Petitioner's possession of the weapon justified acquittal. Courts generally do not second guess the tactical decisions of trial counsel. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999); *Collier v. United States*, 92 F. Supp. 2d 99, 103 (N.D.N.Y. 2000). Given the evidence in this case, counsel's decision not to object to introduction of the photographs and to use them as part of his closing in this manner was not an unreasonable tactical choice.

For these reasons, Petitioner's ineffective assistance claim lacks merit.[6]

### F. Harsh and Excessive Sentence

As a final ground for review Petitioner argues that his determinate sentence of fifteen years was "unduly harsh" because his "misconduct was neither deplorable in the abstract, nor did it approach the outer bounds of misconduct." Pet. at pp. 17-18. Petitioner was sentenced as a second felony offender to the maximum term of fifteen years, plus five years post release supervision, on his conviction for Possession of a Weapon in the Second Degree, which is a class C violent felony. *See* Dkt. No. 16-10; N.Y. Penal Law §§ 70.06(6)(b) & 265.03. This claim lacks merit and the Court recommends that it be denied.

"No federal constitutional issue is presented where . . . the sentence is within the range

---

[6] Petitioner also objects that his "counsel requested a recess so that he could properly frame his motion for a trial order of dismissal," but concedes that this is not "*per se* ineffective assistance." Pet. at p. 16. As such, it is no basis for relief.

prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Petitioner was sentenced as a second felony offender on a conviction for Criminal Possession of a Weapon in the Second Degree, which is a class C violent felony. N.Y. Penal Law §§ 70.06(6)(b) & 265.03. Under CPL § 70.06(b), a determinate sentence for a second felony offender on class C violent felony "must be at least six years and must not exceed fifteen years." On direct appeal, Petitioner conceded that the fifteen year sentence Petitioner received "was the maximum sentence allowable by law." Dkt. No. 16-1 at p. 64. Therefore, because Petitioner's sentence was within the range prescribed by state law his excessive sentence claim is not a basis for *habeas* relief.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[7] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   October 9, 2018
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

*-21-*